```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____
MARY MIDGETT, for MICHAEL MIDGETT,

                Plaintiff,        06-CV-6653T(f)

       v.                          **DECISION**
                                                      **and ORDER**
JO ANNE B. BARNHART, Commissioner
of Social Security

                Defendant.
_____

## INTRODUCTION

Plaintiff Michael Midgett, Jr. ("Midgett" or "plaintiff"), by his parent, Mary Midgett, brings this action pursuant to Title XVI of the Social Security Act ("Act"), codified at 42 U.S.C. § 405(g) claiming that the Commissioner of Social Security ("Commissioner") improperly denied his application for child Social Security Income ("SSI") benefits.  Specifically, Midgett alleges that the decision of an Administrative Law Judge ("ALJ") who heard his case and denied his application was erroneous because it was not supported by the substantial evidence contained in the record.

The Commissioner moves for judgment on the pleadings on grounds that the ALJ's decision was correct, was supported by substantial evidence, and was made in accordance with applicable law.

## BACKGROUND

On September 5, 1997, plaintiff's mother, Mary Midgett, applied for child Social Security Income benefits on behalf of her

son, Michael Midgett, who at the time was a 10-year old student, claiming that Midgett was disabled as of November 4, 1993, due to Attention Deficit/Hyperactivity Disorder ("ADHD") and a learning disability. (Tr. 15, 100). Midgett was found disabled on November 25, 1997, because his impairment met the 112.05C Listing. (Tr. 15, 44, 100-03). On June 13, 2002, a redetermination of Midgett's claim was made and the Social Security Agency determined that Midgett was no longer disabled. (Tr. 49-52). This decision was affirmed upon reconsideration by a Disability Hearing Officer. (Tr. 70-75). Thereafter, plaintiff requested an administrative hearing which was held on February 19, 2002 before an ALJ. (Tr. 21-43). By decision dated June 5, 2003, the ALJ found that the plaintiff's disability ceased on June 1, 2002. (Tr. 14-20). Thereafter, Midgett's appeal of the ALJ's decision to the Social Security Appeals Council was denied on August 8, 2003, and on September 24, 2003, plaintiff filed this action. (Tr. 6-8).

## DISCUSSION

I.  Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is

defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison v. NLRB, 305 U.S. 197, 229 (1938). Section 405(g) thus limits the court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See, Monguer v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that the reviewing court does not try a benefits case de novo). The court is also authorized to review the legal standards employed by the Commissioner in evaluating the plaintiff's claim.

"Though [the court] must credit an ALJ's findings if supported by substantial evidence, we retain a responsibility to conduct a searching inquiry and to scrutinize the entire record, having in mind that the Social Security Act…is remedial in purpose." citing McBrayer v. Secretary of Health and Human Services, 712 F.2d 795, 798-99 (2nd Cir. 1983); Dousewicz v. Harris, 646 F.2d 771, 773 (2nd Cir. 1981). Defendant asserts that his decision was reasonable and is supported by substantial evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the court is convinced that "the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief," judgment on the pleadings may be appropriate.  See, Conley v. Gibson, 355 U.S. 41, 45-46 (1957). For the reasons that follow, the case is remanded to the Secretary for calculation of benefits.  Accordingly, plaintiff's motion for judgment on the pleadings is granted and defendant's motion for judgment on the pleadings is denied.

>   II.  The Applicable Legal Standard for Determining Disability of a Child

The Social Security Act is a remedial statute which must be "liberally applied"; its intent is inclusion rather than exclusion. Marcus v. Califano, 615 F.2d 23 (2d Cir. 1979).  The SSI program is a federal program that provides benefits to needy, aged, or disabled individuals who meet certain statutory income and resource limitations.  42 U.S.C. § 1381.  Under Pub.L. No. 104-193, 1996 U.S. Code Cong. & Admin. News (110 Stat.) 2105, a disability exists for purposes of SSI benefits if a child under the age of eighteen:

> (1) has a medically determinable physical or mental impairment, (2) which results in marked and severe functional limitations, and (3) which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ... [however,] no individual under the age of 18 who engages in substantial gainful activity ... may be considered to be disabled.

42 U.S.C. § 1382c(a)(3)(C)(i)-(ii); see Encarnacion v. Barnhart, 331 F.3d 183, 189 (2d Cir. 2004).

The Commissioner employs a three-step sequential analysis to determine whether a child is disabled within the meaning of the Act. 20 C.F.R. § 416.924(a); see also Pollard v. Halter, 377 F.3d 183, 189 (2d Cir. 2004). The first step is to determine whether the child is engaging in "substantial gainful activity." 20 C.F.R. § 416.924(b). If he is not, the ALJ considers at step two whether the child has a "medically determinable impairment that is severe," which is defined as an impairment that causes "more than minimal functional limitations." Id. at § 416.924(c). At step three, if the ALJ finds a severe impairment, he then must consider whether the child has an impairment that "meets," "medically equals," or "functionally equals" a disability listed in the Commissioner's Listing of Impairments, found at 20 C.F.R. pt. 404, Subpt. P, App. 1. *Id.* at § 416.924(d); 20 CFR § 416.924a(b)(4).

To "functionally equal the listings," an impairment "must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a); see also Pollard, 377 F.3d at 190; Encarnacion, 331 F.3d at 84-85. A "marked limitation" is one where the "impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i); see also, e.g., Pollard, 377 F.3d at 190. An "extreme" limitation is one where the "impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete

activities." 20 C.F.R. § 416.926a(e)(3)(i); Pollard, 377 F.3d at 190.

The six functional domains are: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well being." 20 C.F.R. § 416.926a(b)(1); see also 20 C.F.R. § 416.926a(g)-(l); Pollard, 377 F.3d at 190; Encarnacion, 331 F.3d at 84 & n. 4.

The ALJ determined at step one that Midgett was not engaging in substantial gainful activity. He found at step two that Midgett suffered from ADHD, a learning disability, and speech language delays, which were "severe" medically determinable impairments within the meaning of the regulations. At issue here is the ALJ's conclusion at step three that Midgett's impairments did not meet, medically equal, or functionally equal the Listings markedly in two domains of functioning or extremely in one domain. (Tr. 17-21).

    III. <u>The Commissioner's Decision to Deny the Plaintiff Benefits Was Supported by Substantial Evidence on the Record</u>.

The ALJ decided that based on the evidence before him the plaintiff did not suffer from a disability under the Social Security Act. The ALJ found that while plaintiff suffered from ADHD, a learning disorder, and speech language delays, those

conditions did not rise to the level of an extreme limitation in one domain or marked limitations in two domains under the Social Security Regulations. 20 C.F.R. § 416.926a(a). Specifically, the ALJ held that the plaintiff had a less than marked limitation in the domain of acquiring and using information, attending and completing tasks, and interacting and relating with others and no limitation in regards to the domains of moving about and manipulating objects, caring for yourself, and health and physical well-being. (Tr. 18); 20 C.F.R. § 416.926a. In making this determination, the ALJ was required to consider "all of the relevant evidence in the record, including: (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and ... experience." DeLeon v. Apfel, 2000 WL 1873851 at 8 (internal quotations omitted); see also, e.g., Williams v. Bowen, 859 F.2d 255, 259 (2d Cir.1988); Morel v. Massanari, 01 Civ. 0186, 2001 WL 776950 at 5 (S.D.N.Y 2001).

The ALJ's determination that the plaintiff does not have a marked or extreme limitation in acquiring and using information is supported by substantial evidence in the record. Examples of limited functioning in acquiring and using information include the inability to understand words about space, size or time, talking in

short simple sentences and difficulty explaining what you mean. 20 C.F.R. § 416.926a(g)(3).  On the plaintiff's annual Speech-Language Diagnostic Data form on November 6, 2002, his third grade teacher, Mary Reid noted that the plaintiff had age appropriate articulation.  (Tr. 247).  At an examination on April 25, 2002, speech language pathologist, Prudence Palmer, concluded that plaintiff's speech and intelligibility were normal and that he had moderate delays in receptive language and mild delays in his pragmatic skills.  (Tr. 338-9).  Palmer also noted that the plaintiff can follow three step directions, communicate clearly using complete sentences and respond appropriately to familiar discourse.  (Tr. 338).  Following a TOLD-PII test designed to evaluate expressive communication skills, the plaintiff scored above average in oral vocabulary and average in word articulation. Id.  Palmer diagnosed a moderate language comprehension disorder and a mild to moderate language production disorder and recommended language therapy two to three days a week at school .  (Tr. 340).

On May 24, 2002, consultative speech language pathologist, Jacqueline M. Weir opined that the plaintiff had less than marked limitations due to speech and language impairments. (Tr. 341). On a Speech-Language Diagnostic Data form on September 27, 2001 Susana Wilson concluded that the plaintiff's articulation and intelligibility were within normal limits, but he needed to

continue to develop expressive and receptive language skills. (Tr. 197).

The ALJ's finding that the plaintiff does not have a marked or extreme limitation in attending and completing tasks is supported by substantial evidence in the record. In this domain consideration is given to how well the claimant is able to focus and maintain attention, how well the claimant can begin, carry through, and finish activities, including the pace the claimant can perform activities and the ease with which the claimant can change them. 20 C.F.R. § 416.926a(h). School-age children (age 6 to age 12) should be able to focus their attention in a variety of situations, remember and organize school materials, complete homework assignments, stay on task and sustain their attention well enough to participate in group sports. 20 C.F.R. § 416.926a(h)(2)(iv). On June 25, 2002 on a Reconsideration Report for Disability Cessation the plaintiff reported that he sings in a choir, likes to play video games, play in the park, and play football. (Tr. 160). On the plaintiff's third grade Academic Performance and Learning Characteristics form on November 6, 2002, Midgett's third grade teacher, Mary Reid noted that the plaintiff is functioning at the second half of the second grade in written language, math and reading and does well following a routine. (Tr. 235). On this form Mary Reid twice stated that Midgett requires eye glasses, but to date has not worn them yet. (Tr. 237). At an examination at the University at Buffalo Family

Medical Center Dr. Bhawana Gupta noted that the plaintiff's vision was 20/30 in the left eye and 20/25 in the right eye. (Tr. 329). On April 22, 2002 plaintiff's second grade teacher, Debra Carlin concluded that plaintiff did not have problems in the effective completion of tasks in a timely manner, although work was modified to his ability level in the classroom. (Tr. 194). At an Educational Evaluation on August 10, 2000 Educational Specialist, Judy Masters opined that the results of the plaintiff's tests demonstrate that he can be expected to perform at an academic level slightly lower than that of same age peers. (Tr. 190).

The ALJ's finding that the plaintiff does not have a marked or extreme limitation in interacting and relating with others is supported by substantial evidence in the record. To evaluate a claimant's functioning in this domain consideration is given to how well the claimant initiates and sustains emotional connections with others, develops and uses the language of the community, cooperates with others, complies with the rules, responds to criticism and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). On April 22, 2002 plaintiff's second grade teacher, Debra Carlin noted that Midgett does not exhibit poor frustration tolerance behaviors such as fighting, tantrums and crying episodes. (Tr. 192). Speech pathologist, Prudence Palmer noted that the plaintiff was cooperative and attentive throughout her evaluation on April 22, 2002. (Tr. 338). Speech pathologist, Sheila Ferretti

also noted that the plaintiff was pleasant and cooperative and attempted all tasks as requested during her evaluation on August 15, 2000. (Tr. 180). On Midgett's third grade Social/Emotional Performance form on May 8, 2002 his third grade teacher, Mary Reid concluded that the plaintiff is eager to please, responds well to positive feedback and does not require a Functional Behavior Assessment. (Tr. 236). At a consultative psychological evaluation, psychologist, K.C. Sharma noted that Midgett gets along with his peers, but needs a structured classroom due to hyperactivity and a poor attention span. (Tr. 345).

Consideration will be given to the effects of medication on the claimant's symptoms, signs, laboratory findings and functioning. 20 C.F.R. § 416.924a(i). With treatment a claimant may not only have symptoms or signs reduced, but may also maintain, return to, or achieve a level of functioning that is not disabling. 20 C.F.R. § 416.924a(i)(iii). On October 8, 2001 Ritu Munjal at the University at Buffalo Family Medicine Center noted that the plaintiff was doing well on Ritalin and that he had received favorable notes from Midgett's teachers. (Tr. 326). When the plaintiff's medication was switched to Adderall, Dr. Bhawana Gupta concluded that the plaintiff's Attention Deficit Hyperactivity Disorder ("ADHD") was doing better on January 13, 2003 due to the medication. (Tr. 381). This diagnosis of behavioral improvement with medication is supported by the report of plaintiff's second

grade teacher, Debra Carlin, on April 22, 2002. (Tr. 192-96). Carlin opined that the plaintiff is "extremely well behaved and attends to lessons when he takes his medication." (Tr. 193). On March 27, 2001 Carlin again noted that the plaintiff is generally well behaved on his medication and when he is not on his medication Midgett can be inattentive and aggressive. (Tr. 212).

  Objective medical evidence supports the ALJ's finding that the plaintiff is not disabled. On August 10, 2000 school psychologist, Carolyn Stringfield administered a Stanford-Binet Intelligence Test. (Tr. 184-86, 221-23). The plaintiff earned a composite score of 79 on this test, placing him in the lower limits of the low average range. (Tr. 184, 221). Midgett scored an 85 in verbal reasoning, 88 in abstract/visual reasoning, 79 in short term memory, and a 78 in quantitative reasoning. (Tr. 185, 222). The plaintiff underwent another Stanford-Binet Intelligence Test on July 25, 2003 by school psychologist Michael A. Munella Jr., in which Midgett earned a composite score of 75. (Sealed Documents). Munella observed that the plaintiff was not wearing his glasses for this test, even though Midgett was prescribed glasses. (Sealed Documents). On May 25, 2002 Dr. K.C. Sharma administered a Test of Nonverbal Intelligence ("TONI-III"), in which the plaintiff obtained a deviation quotient of 85, placing him in the low-average range of intelligence. (Tr. 344). The plaintiff was given a percentile rank of 16, meaning that he performed better than 16% of

other 8-year, 6-month-old subjects. Id. The plaintiff also underwent a Wide Range Achievement Test during this examination with Dr. Sharma. (Tr. 345). Midgett obtained a reading level and spelling grade of 2.9, which is considered average for a child of his age and IQ. Id.

The plaintiff's claim that his mental impairments meet the 112.05 Listing is not supported by substantial evidence in the record. The extent of the plaintiff's combined mental disability, as found by the ALJ, does not rise to the level required by the Social Security regulations to support a claim of total disability within the meaning of the Act. Accordingly, there is substantial evidence in the record to support the ALJ's finding that the plaintiff is not disabled.

## CONCLUSION

For the reasons set forth above, I grant Defendant's motion for judgment on the pleadings, and dismiss plaintiff's complaint with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

                                         S/Michael A. Telesca
                                 _____
                                         MICHAEL A. TELESCA
                                 United States District Judge

Dated:    Rochester, New York
            January 24, 2007